UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

ELIZABETH ROBERTSON,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

Hon. Sally J. Berens

Case No. 1:18-cv-964

**OPINION**

    This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claims for Disability Insurance Benefits (DIB) under Title II of the Social Security Act and Supplemental Security Income (SSI) under Title XVI of the Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.

    Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Plaintiff seeks review of the Commissioner's decision, arguing that the Commissioner should have given her treating psychiatrist's opinions controlling weight and failed to follow the requirements of 20 C.F.R. §404.1527(c) in assessing those opinions; the Commissioner erred in concluding that Plaintiff's impairments did not meet or medically equal Listing 12.04; and the Commissioner's residual functional capacity findings were not supported by substantial evidence.

    For the following reasons, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision will be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making a decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and those findings are conclusive provided substantial evidence supports them. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance. *See Cohen v. Sec'y of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff filed applications for DIB and SSI on July 17, 2015, alleging that she had been disabled since September 1, 2013. (PageID.295–98.) Plaintiff was 29 years old at time of the alleged onset date. (PageID.295.) Plaintiff had previous work as a hair stylist and a preschool teacher. (PageID.123–24.) Plaintiff's application was denied, and she requested a hearing before an Administrative Law Judge (ALJ). (PageID.222.)

On September 26, 2017, ALJ Donna Grit conducted a hearing and received testimony from Plaintiff, a vocational expert, and Plaintiff's father, Bruce Dean. (PageID.115–56.) On December 29, 2017, the ALJ issued a written decision finding that Plaintiff was not entitled to benefits because she was not disabled within the meaning of the Act. (PageID.44–61.) The Appeals Council denied Plaintiff's request for review on June 28, 2018, rendering it the Commissioner's final decision in the matter. (PageID.33–36.) Plaintiff initiated this civil action for judicial review on August 27, 2018.

**ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

3

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that, if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

After determining that Plaintiff had not engaged in substantial gainful activity since her onset date, the ALJ found that Plaintiff suffered from the following severe impairments: (1) bipolar disorder; (2) anxiety; (3) cervical degenerative disc disorder; (4) obesity; (5) bilateral knee osteoarthritis; (6) restrictive lung disease/interstitial lung disease; (7) sleep apnea; and (8) restless leg syndrome. (PageID.47.) At step three, the ALJ determined that Plaintiff does not have an

---

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

impairment or combination of impairments that meets or medically equals any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.48-52.) The ALJ considered listings 1.04, 3.02, 3.03, 12.04, and 12.06, focusing the substantial portion of her step-three discussion on the paragraph B and C criteria of listing 12.04 (depressive, bipolar and related disorders) because Plaintiff's "most prominent concerns are related to her mental health functioning." (PageID.49.) The ALJ further noted that the only medical source opinions Plaintiff offered were from her treating psychiatrist, Mauli Verma, M.D. (*Id.*)

Regarding the paragraph B criteria, which pertain to impairment-related limitations, see 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04, the ALJ found that Plaintiff was no more than moderately limited in any of the listed areas of functioning. First, with regard to the areas of understanding, remembering, or applying information, the ALJ found a moderate limitation. (PageID.50.) The ALJ noted that, while Plaintiff forgot medications and appointments at times, she could apply information that she had learned and was able to live alone, drive, care for her children, travel, and handle money. The ALJ further noted that Plaintiff could cook, clean, and follow directions fairly well. (*Id.*) Second, the ALJ found only a mild limitation in the area of interacting with others. She noted that Plaintiff continued to do some work as a hair stylist and engaged in activities involving crowds or other individuals (shopping, visiting others, church, and AA) without difficulty. Third, the ALJ found that Plaintiff was moderately limited in the areas of concentrating, persisting, and maintaining pace, noting that Plaintiff was lethargic at times, did not follow through on some suggestions or recommendations from Dr. Verma, and was not very motivated at times. (*Id.*) Lastly, the ALJ found that Plaintiff was mildly limited in the areas of adapting or managing herself. Here, the ALJ noted that while Plaintiff did not always make good choices, she cared for

5

her children, cooked, cleaned, and interacted with her parents for help. The ALJ further noted that Plaintiff adapted to changes in her mental health status by remaining sober and attending AA meetings. (*Id.*) As for the paragraph C criteria, the ALJ concluded that they were not met because Plaintiff had more than minimal capacity to adapt to changes in her environment or demands that were not already part of her daily life. (*Id.*) The ALJ pointed out that while Plaintiff was seeking an onset date of 2013, the record was limited in establishing a severe mental health problem prior to 2015. The ALJ noted that Plaintiff went through a divorce in 2013 and 2014 that contributed to additional stressors, but with treatment and proper medications starting in 2015, Plaintiff experienced significant improvement as shown by consistent normal or near normal mental status examinations. (*Id.*)

With respect to Plaintiff's RFC, the ALJ determined that Plaintiff retained the capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), subject to the following limitations: (1) no work on ladders, ropes, and/or scaffolding; (2) frequent stooping, crouching, crawling, balancing, and kneeling; (3) avoid more than occasional exposure to humidity or fumes, dusts, gases, odors, poor ventilation, and to extreme heat or cold; (4) no work at unprotected heights or near/with dangerous moving machinery; (5) Plaintiff can understand, remember and apply information so as to perform simple tasks; and (6) Plaintiff can make simple decisions and adapt to only occasional changes in workplace routines. (PageID.52.)

The ALJ found that Plaintiff could not perform her past work. However, based on testimony from the vocational expert, the ALJ found that there were approximately 195,000 jobs in the national economy that an individual of Plaintiff's age, education, work experience, and RFC could perform. (PageID.60.) This represents a significant number of jobs. *See, e.g., Taskila v.*

*Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'").

**Discussion**

**I.      The ALJ Properly Evaluated and Discounted Dr. Verma's Opinions.**

Plaintiff argues that the ALJ erred in giving Dr. Verma's opinions only partial weight. Plaintiff contends that Dr. Verma's opinions were fully supported and, had the ALJ given them proper weight, she would have found Plaintiff disabled.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). That deference is appropriate, however, only where the opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citation omitted). The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must give "good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Those reasons must be "supported by the evidence in the case record and must be sufficiently specific to make clear to any subsequent

7

reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id*. This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (citation omitted). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight it should be afforded. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to her assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir. 2007).

Dr. Verma submitted a Mental Residual Functional Capacity Form dated February 10, 2016 (PageID.753–755); a signed statement dated March 10, 2016 (PageID.756–759); and a signed statement dated September 25, 2017. (PageID.1396–98.) In her February 10, 2016 report, Dr. Verma opined that Plaintiff could not meet competitive standards in attendance, sustaining an ordinary routine without special supervision, and completing a normal workday without interruptions. (PageID.753.) She also opined that Plaintiff had marked difficulties in maintaining

8

concentration, persistence or pace and would miss about four days of work per month.[2] (PageID.754–55.) In her March 2016 statement, Dr. Verma opined that Plaintiff was not capable of working because she could not yet handle taking care of her children and their needs on a full-time basis. (Page ID. 757.) In her September 25, 2017 statement, Dr. Verma noted that Plaintiff's mental health condition had improved since February 2016, but she had deteriorated lately with regard to organization and medication compliance. (PageID.1396.)

The ALJ noted that, if accepted without qualification, Dr. Verma's opinions would indicate a greater degree of functional limitation and possibly satisfy a listing. (PageID.55.) However, the ALJ discounted Dr. Verma's opinions because they were at odds with her own treatment notes and other evidence in the record showing that during 2015 and 2016, Plaintiff had ongoing, sustained improvement in functioning as a result of treatment. (PageID.53–54.) The ALJ found the treatment notes "very important" because they "were written at the time of, or close to the day of the interaction" and "convey[ed] a sense of how the claimant ha[d] functioned during the period at issue." (PageID.56.) Those notes, disclosing mostly normal mental status exams, support the ALJ's finding that Plaintiff experienced sustained, ongoing improvement in functioning as a result of her treatment.

For example:

- On August 17, 2015, during a medication review, Plaintiff or her father reported "definite improvement" since Plaintiff started on Seroquel XR. Although Plaintiff said that she was not motivated to get up and do anything, her father reported improved energy and noted that when Plaintiff visited her parents she did the dishes and helped out with the laundry. Plaintiff was also cleaning her house. Supervised visits with her children were going fine. The mental status exam noted that Plaintiff

---

[2] As for social functioning, Dr. Verma did not check either the "moderate" box or the "marked" box. Instead, she put an "x" just to the left of the line between those two columns. (PageID.754.) Because Dr. Verma provided no explanation of what she intended, divining her intent is, at best, guesswork.

9

- was alert, oriented, and cooperative; had adequate hygiene; was calm and quiet with restricted affect and some psychomotor retardation. (PageID.745.)

- On September 11, 2015, during a medication review, Plaintiff reported that she was doing well overall but was anxious about a move into a new apartment. Her children were still with her parents. Plaintiff's father reported that Plaintiff had been a bit more irritable and "snappy" but was participating in therapy. Plaintiff reported sleeping well. Dr. Verma observed that Plaintiff was alert, oriented, calm, and quiet, had a somber affect and some psychomotor retardation. (PageID.741.)

- On October 22, 2015, Plaintiff was doing "extremely well" on Seroquel XR 300 mg. She was feeling better and was having unsupervised visits with her children for three to four hours. Plaintiff had gained weight but was trying to walk more. Dr. Verma observed that Plaintiff was alert, oriented, cooperative, and calm. Plaintiff's father reported that she had been doing well. She had a bright affect and looked "really good." Plaintiff's thoughts were linear and goal directed and she had good insight. (PageID.736.)

- On November 23, 2015, Plaintiff was "doing very well" and had been taking more responsibility managing her apartment. She did laundry, cooked, cleaned, and was more involved with her children's care. Plaintiff was managing her own medications, not using marijuana, and doing what she needed to do to eventually get her children back. Plaintiff was socializing and doing things that she had not done for years. Dr. Verma observed that Plaintiff's affect was visibly brighter; her mood was euthymic; she maintained good eye contact and was capable of connecting. There was no evidence of psychosis and her speech was fluent with normal rate and rhythm. Plaintiff displayed good insight. Dr. Verma noted that Plaintiff's bipolar disorder was in remission. (PageID.731.)

- On January 19, 2016, Plaintiff was doing well, and her children were staying with her three times per week. Dr. Verma noted that Plaintiff was alert, oriented, pleasant, and cooperative, with a congruent affect and good insight. (PageID.724.)

- During her annual assessment in May 27, 2016, Plaintiff told her case manager that she felt she was doing well and could care for her children. Plaintiff said that she lived in a one-bedroom apartment but wanted to move into a two-bedroom apartment so that her children could stay with her more often. (PageID.1069.)

- On September 23, 2016, Plaintiff reported doing "okay" after her Seroquel XR was decreased to 400 mg. She was more sensitive to criticism but was able to cook, get groceries, and put her kids on the bus in the morning. She was sleeping regularly and not forgetting to take her medications. Dr. Verma noted that Plaintiff was alert and oriented and had good hygiene and grooming. Her thoughts were linear and sequential. She had good insight. (PageID.1058.)

- On November 11, 2016, Plaintiff reported that was doing really well, and she was able to do things that she was supposed to do. She had her children more often and was volunteering at their school. Plaintiff was keeping her house clean, was exercising twice a week and walking for 20 minutes each day and had lost weight. Plaintiff reported that she was in a healthy relationship with a man. Dr. Verma observed that Plaintiff exhibited a euthymic mood, had good hygiene, made good eye contact. Her thought processes were linear and sequential, her speech was fluent, and she had good insight. (PageID.1051.)

- On February 13, 2017, Plaintiff reported that she was doing very well and had her children 50% of the time. Plaintiff's parents were away for two weeks and Plaintiff handled her children well. Plaintiff's mental status remained normal. Dr. Verma reported that Plaintiff's bipolar disorder was in remission. (PageID.1047.)

- In June 2017, Plaintiff's case manager noted that Plaintiff had been responsive and attentive to all her medical and mental health needs, had not missed many appointments, and remained active in AA, her church, and her children's lives. Plaintiff was frustrated that her parents did not believe she could be more independent. (PageID.1031.)

- On October 17, 2017, Plaintiff said that she was doing much better. She was working on tidying up her apartment and felt more energetic. Plaintiff was gradually losing weight. She was trying to get out of the house at least twice a week and was trying to work more doing haircuts and coloring. Dr. Verma reported that Plaintiff was much more in emotional control. Her affect was broad and deep and her mood was euthymic. There was no evidence of psychosis, and Plaintiff's thought processes were logical and sequential. (PageID.1405.)

The ALJ found Dr. Verma's opinions inconsistent with the foregoing treatment records and other medical evidence suggesting that Plaintiff experienced improvement with appropriate medication and that her functional abilities improved as a result of treatment. This was a proper basis to discount Dr. Verma's opinion. *See Fry v. Comm'r of Soc. Sec.*, 476 F. App'x 73, 75–76 (6th Cir. 2012) (concluding that the ALJ properly discounted the plaintiff's treating psychiatrist's opinion as inconsistent with his own objective clinical findings in his treatment notes and other evidence in the record); *Dungey v. Comm'r of Soc. Sec.*, No. 1:12-CV-1190, 2014 WL 1232661, at *10 (W.D. Mich. Mar. 25, 2014) (concluding that the ALJ's decision to give less than controlling weight to the plaintiff's treating psychiatrist's opinion was supported by substantial evidence

because the plaintiff "responded well to conservative treatment and demonstrated significant improvement when taking her medication as prescribed"). The ALJ did not completely reject Dr Verma's opinions, but instead accorded it partial weight. Her rationale for doing so was supported by substantial evidence. Moreover, because the ALJ adequately explained why she found Dr. Verma's opinion inconsistent with the medical evidence, her decision articulated the requisite "good reasons" for not giving Dr. Verma's opinions controlling weight. *See Machiele v. Comm'r of Soc. Sec.*, No. 1:13-CV-624, 2014 WL 4080240, at *1 (W.D. Mich. Aug. 18, 2014) (concluding that the ALJ's explanation why the plaintiff's treating psychologist's opinion was inconsistent with his own treatment notes satisfied the "good reasons" requirement for giving only limited weight to opinion).

Plaintiff argues that the ALJ "cherry picked" evidence from the record that supported her findings and ignored substantial evidence in the record supporting Dr. Verma's opinions and a greater degree of limitation. (ECF No. 10 at PageID.1431.) The Court disagrees. The ALJ acknowledged that the record showed that Plaintiff's symptoms were exacerbated at times during her treatment relationship with Dr. Verma, but she noted that the medical evidence also showed that Plaintiff had sustained, ongoing improvement over the period at issue. (PageID.55.) Moreover, the ALJ was not required to discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (noting that "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"). Further, although Plaintiff is correct that the record contains evidence that supports Dr. Verma's opinions, this Court must affirm the ALJ's findings if supported by substantial evidence, even if "there exists in the record substantial evidence to

support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). That is the case here.

Plaintiff also complains that the ALJ did not sufficiently consider Plaintiff's mental condition prior to her April 2015 psychiatric hospitalization. (ECF No. 10 at PageID.1431.) However, the ALJ noted that the record from that period was fairly limited. (PageID.50 (noting that "there is not very much information prior to 2015 establishing a severe mental health problem").) The ALJ further noted that Plaintiff did not seek psychiatric treatment or follow any substance abuse plan until April of 2015, when she was admitted to the mental health facility and began treating with Dr. Verma. (PageID.55.) Plaintiff fails to explain how or why the evidence prior to April 2015 supports greater mental limitations than those imposed by the ALJ.

II. **The ALJ's Determination that Plaintiff Does Not Meet or Medically Equal Listing 12.04 is Supported by Substantial Evidence.**

Plaintiff argues that had the ALJ properly credited Dr. Verma's opinion, the ALJ would have found Plaintiff disabled under listing 12.04. In fact, the ALJ observed that had she accepted Dr. Verma's findings and opinions, she may have found Plaintiff disabled under a listing. As discussed above, however, the ALJ gave Dr. Verma's opinions only partial weight and found that Plaintiff was not as impaired in the paragraph B areas of functioning as Dr. Verma suggested. (PageID.55.) It also bears mentioning that "no special significance is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner." *Nichols v. Comm'r of Soc. Sec.*, No. 1:12-cv-995, 2014 WL 4259445, at *10 (W.D. Mich. Aug. 28, 2014) (footnote and internal quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(d)(2)). Thus, Dr. Verma's opinions, in and of themselves, would not have necessarily dictated a finding that Plaintiff's mental impairments met

or medically equaled listing 12.04. Moreover, the Court notes that, in concluding that Plaintiff's impairments did not satisfy the paragraph B requirements, the ALJ relied, in part, on therapy progress notes, which, like Dr. Verma's treatment notes, demonstrated both that Plaintiff's condition improved, and Plaintiff sustained a higher level of functioning once she started participating in mental health treatment. (PageID.52.) Accordingly, the ALJ's finding that Plaintiff's impairments did not meet or medically equal listing 12.04 is supported by substantial evidence.

### III. The ALJ Properly Considered Plaintiff's Impairments in Formulating Plaintiff's RFC.

Plaintiff argues that the ALJ erred in formulating Plaintiff's RFC by not considering all of her established impairments as required by 20 C.F.R. §§ 404.1529(c)(3), 404.1520a and SSR 16-3p. The only impairment Plaintiff cites is her mental impairment, which Plaintiff contends the ALJ failed to properly assess because she failed to properly consider Dr. Verma's opinions.

A claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (Social Security Administration July 2, 1996); *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 116 (6th Cir. 2010).

As set forth above, the ALJ gave good reasons for discounting Dr. Verma's opinions, including Plaintiff's improvement in functioning as a result of treatment, as reflected in the treatment notes. For example, the ALJ noted that during a March 27, 2017 medication review Plaintiff told Dr. Verma that she "was the most stable that she has been in her life." (PageID.57 (quoting PageID.1041).) The ALJ also permissibly relied on Plaintiff's mostly normal mental status examinations in formulating Plaintiff's RFC. *See Crawford v. Comm'r of Soc. Sec.*, No.

14

2:18-cv-538, 2019 WL 1512541, at *7 (S.D. Ohio Apr. 8, 2019) (noting that the ALJ properly relied on the plaintiff's mental status examination findings and treatment records in assessing the plaintiff's RFC). The ALJ also noted that, among other achievements, Plaintiff had taken responsibility for her children and was caring for them more often, even as she engaged in more social activities and volunteering and tried to resume doing hairstyling. (PageID.57–58.) The ALJ was entitled to consider these facts in determining the extent of Plaintiff's limitations. *See Robinson v. Comm'r of Soc. Sec.* No. 13-cv-13124, 2014 WL 4145339, at *8 (E.D. Mich. Aug. 20, 2014). Moreover, the ALJ accounted for Plaintiff's mental limitations by limiting her to work involving simple tasks and decisions and the ability to adapt to only occasional changes in workplace routines. (PageID.52.)

Plaintiff also argues that the ALJ failed adequately to explain her decision to give Plaintiff's father's testimony limited weight. Mr. Dean's testimony qualified as an "other source" third-party statement. *See* SSR 06-03p, 2006 WL 2329939, at *2, 6 (Aug. 9, 2006);[3] 20 C.F.R. § 404.1513(a) (providing that other sources may provide information about any issue involved in the claim). In evaluating "other source" opinions, an ALJ should consider various factors, "including how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007) (citation omitted).

The ALJ properly considered Mr. Dean's testimony and adequately explained her reasons for assigning it little weight. Although the ALJ noted that Mr. Dean's opinion regarding Plaintiff's functioning tended to support Plaintiff's claim, she found it at odds with the treatment notes in the

---

[3] SSR 06-03p was rescinded effective March 27, 2017. 82 Fed. Reg. 15263-01 (Mar. 17, 2017). However, because Plaintiff filed her claims prior to the effective date, SSR 06-03p still applies in this case.

record, including Dr. Varma's mental status examinations, which, as set forth above, the ALJ found "far more persuasive." (PageID.58.) Here, the ALJ discussed Mr. Dean's opinion and gave adequate reasons for assigning it limited weight. *See Cahill v. Comm'r of Soc. Sec.*, No. 11 CV 2207, 2013 WL 331228, at *24 (N.D. Ohio Jan. 8, 2013), *report and recommendation adopted* 2013 WL 331115 (N.D. Ohio Jan. 25, 2013) (noting that "the ALJ did not err by failing to discuss and explain the weight he assigned the third party reports, which largely echoed Plaintiff's own reports and were largely inconsistent with the medical evidence and Plaintiff's daily activities").

In sum, the Commissioner's decision was in accordance with applicable law and supported by substantial evidence.

## CONCLUSION

For the reasons stated herein, the Commissioner's decision is **AFFIRMED**.

An Order consistent with this Opinion will enter.


Dated: March 10, 2020            /s/ Sally J. Berens
                                        SALLY J. BERENS
                                        U.S. Magistrate Judge